[Civ. No. 19099.   Second Dist., Div. Three.   Dec. 22, 1952.]

LeROY D. OWEN, Appellant, v. NATIONAL CONTAINER CORPORATION OF CALIFORNIA, Respondent.

22

Guthrie, Darling & Shattuck for Appellant.

Bronson, Bronson & McKinnon and Edgar H. Rowe for Respondent.

SHINN, P. J.—Plaintiff LeRoy D. Owen appeals from a judgment of dismissal after the demurrer of defendant National Container Corporation of California, a corporation, was sustained to the third amended complaint without leave to amend. Plaintiff, a real estate broker, sued for the sum of $15,000 on an express contract to pay for his services, and in a second cause of action for the same amount alleged to be the value of the services. National Container Corporation, a foreign corporation, parent of respondent, also was named as a defendant, but the action was dismissed as to it after an order quashing service of summons.

It appears from the briefs that the demurrer was sustained upon the ground that the action was upon a contract employing plaintiff for the purchase by the California corporation of real estate and was not in writing. (Code Civ. Proc., § 1973; Civ. Code, § 1624.) We are of the opinion that the demurrer should not have been sustained.

The complaint alleged in part as set out below.[1] Attached to the complaint were copies of 37 written communications

---

[1] "On or about August 15, 1946 defendants employed plaintiff to locate a suitable industrial site in the Los Angeles metropolitan area for defendants, to be used by defendants for a Los Angeles factory. As part of the agreement then made by plaintiff with defendants plaintiff was to develop surveys for defendants on labor conditions, transportation matters, financial arrangements and further plaintiff was to negotiate and assist defendants in the preparation of engineering drawings on various proposed factory layouts and further plaintiff was to negotiate on behalf of defendants with the Central Manufacturing District, Inc., of Los Angeles, respecting the proposed plant to be constructed by defendants in that district. For such services defendants agreed to compensate plaintiff therefor by paying to plaintiff the usual commission for such services, that is, 5% of the cost of the improvements and installations at the factory to be constructed by defendants on the site located by plaintiff. Defendants confirmed this agreement in writing as shown by the written documents attached hereto marked Exhibits A to LL inclusive and by such reference made a part hereof as though fully alleged. Dan D. Froehle, whose name appears on several of the exhibits attached hereto, was the agent and employee of plaintiff at all times herein mentioned.

"During the period from August 15, 1946 to February 17, 1950 plaintiff performed all of the services required of plaintiff by his agreement with defendants. The nature and extent of such services are more fully described in the exhibits attached hereto and particularly Exhibits B, E, N, R, W, X, Y, Z, BB, DD, FF, II, KK.

"As a direct result of plaintiff's efforts and services defendants on or about February 8, 1950 purchased from the Central Manufacturing District, Inc., a 5.5 acre parcel of property for defendants' Los Angeles factory. Defendants thereafter and prior to the commencement of this action constructed a factory building and made improvements on said site, and plaintiff is informed and believes and therefore alleges that the cost of said building and improvements was

that passed between plaintiff and one or the other of defendant corporations, as well as a communication from George J. Schneider to Samuel Kipnis, who were respectively the vice president and the president of both corporations, a copy of which was sent to plaintiff. These communications were under various dates between October 15, 1946, and November 11, 1949. The complaint alleged that plaintiff had performed all the agreed services. The writings show that for a period of about three years plaintiff was endeavoring to locate for defendants a suitable site for a factory; he sent information to defendants concerning a number of improved properties which were considered by defendants and found unsuitable; in 1949 he submitted a 5.5-acre parcel belonging to the Central Manufacturing District, Inc., together with plans and specifications and estimates of cost of a factory building prepared by the owner of the property and he also arranged numerous alterations in the plans and specifications in accordance with the wishes of defendants. It also appears from the correspondence that plaintiff furnished defendant with the surveys described in the complaint. Appellant eventually purchased the 5.5-acre site and constructed thereon a building alleged on information and belief to have cost $300,000. It was alleged that in constructing the building defendants used and adapted many of the suggestions, plans and ideas developed by plaintiff and that the plaintiff's 5 per cent commission is due because the purchase of the real estate and construction of the building were consummated. Plaintiff limited his claim to a percentage of the cost of the building and made no demand for compensation for negotiating and effecting a sale of the real property.

The contentions of the parties which require decision are the following: Plaintiff claims that the agreement pleaded was one that was not required to be in writing, and that proof of the agreement and full compliance on his part would entitle him to the agreed compensation; respondent, the Cali-

---

$300,000. In erecting said factory building defendants used and adapted many of the suggestions, plans and ideas that had been developed by plaintiff for defendants in accordance with the agreement made between plaintiff and defendants. Directly in accordance with the provisions of Exhibit A and in accordance with the agreement made between plaintiff and defendants plaintiff is entitled to 5% of the cost of such improvements, that is, 5% of $300,000, to wit, $15,000. Said 5% commission is now due as contemplated by the agreement plaintiff had with defendants and as shown by Exhibit A because the purchase of the real estate and construction of the building and improvements thereon were consummated."

fornia corporation, hereafter referred to as defendant, maintains that the services of plaintiff were only those of a broker endeavoring to make a sale of real property, the special services alleged being only incidental to the main purpose of assisting defendant in acquiring a suitable location, either improved or unimproved, and that a contract therefor was required to be in writing; that the writings do not constitute an employment of plaintiff for any purpose, nor an agreement to compensate him. Plaintiff replies that the writings are sufficient as a written employment of plaintiff to render the special services if a writing was required.

It is obvious that the letters were incorporated in the complaint upon the theory that they constituted a written agreement of employment and that this theory was pressed upon the trial court. As we shall presently see the correspondence which related to the question of performance, rather than to the matter of employment, tended to confuse the issue, namely, whether the agreement pleaded was within the statute of frauds. ■ We agree with the trial court that the writings do not constitute an employment of plaintiff or an agreement to pay him for his services. They merely show the nature of plaintiff's services, and defendants' requests for further information. If the writings alone were to be considered, we would not hesitate to regard them as insufficient to entitle plaintiff to recover any compensation for his services, but they must be considered with the allegations of the complaint. The agreement pleaded may fairly be construed as one under which plaintiff was to be compensated if he performed his services as agreed and a building was constructed upon a site ''located'' by him and purchased by defendant. ■ The allegation that ''defendants confirmed this agreement in writing as shown by the written documents attached hereto'' etc., is a mere conclusion and not an allegation that the writings constituted the contract.

■ An employment of plaintiff to negotiate and assist defendants in effecting a purchase of real property for compensation or a commission would, of course, be invalid unless in writing. (Code Civ. Proc., § 1973; Civ. Code, § 1624; *Shanklin* v. *Hall*, 100 Cal. 26 [34 P. 636]; *Dolan* v. *O'Toole*, 129 Cal. 488 [62 P. 92]; *Duckworth* v. *Schumacher*, 135 Cal. App. 661 [27 P.2d 919].) ■ A valid oral agreement could be made for the special services alleged, consisting of the surveys made, the furnishing of plans, specifications and esti-

mates, and the negotiations carried on for the construction of a building by Central Manufacturing District.

An employment of plaintiff merely to give defendants information as to available factory sites would not have to be in writing. (*Wilson* v. *Morton,* 85 Cal. 598 [24 P. 784].)

An employment of plaintiff "to locate a suitable industrial site" without any duty on his part to bring the parties together or to negotiate or assist in a purchase would not be an employment to purchase real property. (See *Blanchard* v. *Pauley,* 92 Cal.App.2d 244 [206 P.2d 864].) The complaint, exclusive of the exhibits, did not allege an agreement that was required to be in writing and we do not believe the attached correspondence constituted an employment different from the one alleged. So far as factory sites were concerned the letters from plaintiff conveyed information as to various sites but none of the letters from either side disclosed any negotiations or authority to negotiate with any of the owners until the Central Manufacturing District site was proposed. With reference to this site there were extensive negotiations carried on by plaintiff, but these were concerned with the proposed construction of a building on the site, which was the subject of numerous letters between plaintiff and the two corporations.

Since it was not alleged in the complaint that plaintiff represented defendant as its agent in acquiring the real property, it was to be inferred that he represented only the seller. The allegation that the site was purchased and the building constructed "as a direct result of plaintiff's efforts and services" etc. would be true if plaintiff only "located" the site and rendered the agreed services in negotiating for and assisting in the construction of the building. It is not an allegation that plaintiff acted as defendants' agent in negotiating for the purchase of the real property.

It is clear that in the absence of an allegation of an express agreement, no obligation would be implied from the correspondence to compensate plaintiff for his alleged services, all of which would appear to have been merely incidental to his efforts to earn a commission from an owner for negotiating a sale of real property to defendant. Plaintiff has pleaded a most unusual agreement under which he was to locate a site but not negotiate for or otherwise assist in its purchase. Defendant says it would be strange indeed if a broker could earn a commission by merely pointing out a property which met the requirements of a customer. Perhaps what is meant is

that it would be strange that one should agree to pay for so slight a service.

But the agreement which was pleaded called for considerably more than locating a site for defendant. It was alleged to have been entered into on or about August 15, 1946, and required plaintiff to render services in connection with the construction of a building, which subject, incidentally, did not arise for consideration until nearly three years later, when the 5.5-acre site was submitted together with plans, etc., for a building.

Although we hold that the agreement alleged was not within the statute of frauds, if we assume, as defendant does, that the correspondence shows that plaintiff, in his efforts to aid defendant in the acquisition of real property went beyond mere efforts to "locate" a site and that a contract for such additional services would have to be in writing, our conclusion would remain the same.

A trial court may find from the evidence that an agreement was made for the limited services alleged in the paragraph we have quoted from the complaint; it may find there was an oral agreement of employment to purchase real estate or that there was no employer-employee relationship whatever between the parties. We have only to determine whether the complaint pleads an agreement that was required to be in writing. The correspondence did not constitute the agreement which was pleaded. It did not purport to create an employer-employee relationship, and if there was an antecedent employment for any purpose it was not superseded by the correspondence which came later. What plaintiff did in the way of performance was not inconsistent with the existence of the agreement he alleged. The evidence of plaintiff's activities, as shown by the letters, will be of considerable importance upon a trial in determining what, if any, agreement the parties had, but if plaintiff has alleged an agreement not required to be in writing the terms of it would not be enlarged or the nature of the agreement changed by his putting forth more effort than the agreement called for.

■ If it should be determined that a written employment was required as to some of the agreed services, but not as to the remainder, the questions would arise whether the services were severable, and whether just compensation for those for which defendant had given valid authorization was readily ascertainable. Facts might be found which would render applicable the doctrine stated in *Marks* v. *Walter G. McCarty Corp.*, 33 Cal.2d 814 [205 P.2d 1025]. In that case a broker

was orally employed to effect the sale of a furnished hotel; the sale was made through his efforts, the sale price of the furniture being $600,000. In a suit for a commission upon the price paid for the entire property the broker was allowed to recover a commission based on the selling price of the furniture, but was denied a commission on the sale of the real property. We are of the opinion that the principle declared in the cited case furnishes an alternative reason for our conclusion that the demurrer should not have been sustained.

We may say, however, in conclusion, that if the court should find that the services alleged were merely incidental to plaintiff's efforts to bring about a sale of real property to defendant, and that there was no express agreement of defendant to pay for the same, plaintiff cannot prevail in this action, either upon contract or in *quantum meruit*.

Other points argued in the briefs do not require special mention.

The notice of appeal is directed against several orders sustaining demurrers and an order quashing service against National Container Corporation. The orders being nonappealable, the purported appeals are dismissed. Appellant does not claim error in the order quashing service of process and will be deemed to have waived his right to a review of that order.

The judgment is reversed as to National Container Corporation of California and affirmed as to National Container Corporation.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied January 6, 1953, and respondent's petition for a hearing by the Supreme Court was denied February 19, 1953. Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.